UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DAVID SANCHEZ DOMINGUEZ,

                    Petitioner,

        v.

RENEE BAKER, et al.,

                    Respondents.

Case No. 3:17-cv-00053-HDM-WGC

ORDER

This counseled habeas petition pursuant to 28 U.S.C. § 2254 comes before the court for consideration of the merits of the petition's surviving claims (ECF No. 10). Respondents have answered (ECF No. 28), and petitioner David Sanchez Dominguez ("petitioner") has replied (ECF No. 32).

**I. Background**

The petitioner in this action challenges his 2011 state court conviction for murder in the first degree with use of a deadly weapon, aggravated stalking, and burglary. (Pet. Ex. 10).[1] He is serving, for the murder conviction, a sentence of life imprisonment without the possibility of parole, in addition to sentences on the other convictions. (*See id.*)

---

[1] The petitioner's exhibits cited in this order are located at ECF Nos. 11-13 (cited as "Pet. Ex."). The respondents' exhibits are located at ECF Nos. 17-20 (cited as "Resp. Ex.").

The relevant facts, in brief, as accurately summarized by the Nevada Supreme Court, are as follows:[2]

> David Sanchez-Dominguez married Maria Angustias Corona in 2002. Over the course of their seven-year marriage, Sanchez-Dominguez subjected Maria to physical and mental abuse. Maria attempted to leave Sanchez-Dominguez several times, but always returned. In September 2009, Maria again left Sanchez-Dominguez and moved into her mother's home. She also obtained a temporary protective order that forbade Sanchez-Dominguez from coming within 100 yards of Maria, her mother's home, or her place of work. Despite the protective order, Sanchez-Dominguez continued to pursue Maria.
>
> On November 13, 2009, Sanchez-Dominguez drove to Maria's mother's home. He entered the home, uninvited, through the unlocked front door. Inside, he encountered several of Maria's relatives, including her mother, two cousins, and two brothers. Repeatedly, Sanchez-Dominguez asked for Maria and was told that she was not home. Maria's relatives told Sanchez-Dominguez to leave, but he refused. When Maria's cousin Jose moved toward the phone to call 911, Sanchez-Dominguez pulled a gun from the waist of his pants and told Jose not to move. He then pointed the gun at Maria's mother. Hearing the commotion, Roberto Corona, Maria's brother, came downstairs. Upon realizing what was happening and seeing that Sanchez-Dominguez had the gun drawn, Roberto stepped between his mother and Sanchez-Dominguez and said, "if you're going to shoot, shoot." Immediately, Sanchez-Dominguez held the gun to Roberto's chest and fired a single shot, killing him."

(Pet. Ex. 13 at 2-3).

After being tackled and tied up by Maria's family, the petitioner was arrested and charged by way of criminal complaint with murder in the first degree or, in the alternative, felony murder, felon in possession of a firearm, and burglary. (Resp. Ex. 3). An amended criminal complaint two months later added the aggravated stalking charge. (Resp. Ex. 5).

---

[2] The court has independently reviewed the trial transcript and concurs with the state court's summary in all material respects.

The defense moved to sever the aggravated stalking charge from the remaining charges. (Pet. Ex. 2). The trial court denied the motion, and trial commenced. (Pet. Ex. 3 (Tr. 15)). The jury found petitioner guilty of murder in the first degree, aggravated stalking, and burglary.[3] (Resp. Exs. 25-27).

At the subsequent penalty phase for the murder conviction, petitioner made an unsworn statement, while the State introduced the testimonies of the victim' mother and sister, as well as evidence of two prior felony convictions of the petitioner. (Pet. Ex. 9). The jury returned a verdict of life without the possibility of parole. (*Id.* at 35).

The petitioner filed a direct appeal. (Resp. Ex. 39). The Nevada Supreme Court, in an *en banc* opinion, affirmed. (Pet. Ex. 13). Thereafter, the petitioner pursued his state court postconviction remedies, and failing to obtain relief there, then filed the instant federal habeas petition. (Pet. Exs. 14 & 19).

The first amended petition, filed by counsel, contains two surviving claims for this court's consideration: Claims Two and Three. Claim Two was decided by the state courts on the merits. Claim Three is procedurally defaulted, so petitioner must demonstrate cause and prejudice to excuse the default.

## II. Standards

A. AEDPA Review

28 U.S.C. § 2254(d) provides the legal standards for this Court's consideration of the merits of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State

---

[3] The felon in possession charge was not tried before the jury and was, in the end, dismissed without prejudice. (*See id.* at 9; Pet. Ex. 10).

court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is to cases where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted.)

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Andrade*, 538 U.S. 63 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." *Id*. at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of

> appellate review, could not reasonably conclude that the
> finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181. The state courts' decisions on the merits are entitled to deference under AEDPA and may not be disturbed unless they were ones "with which no fairminded jurist could agree." *Davis v. Ayala*, – U.S. –, 135 S. Ct. 2187, 2208 (2015).

B. Procedural Default

A procedural default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire

[proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

## III. Analysis

### A. Claim Two

In Claim Two, the petitioner asserts that his rights to due process and a fair trial were violated by the court's denial of the motion to sever the aggravated stalking charges from the murder charge. (ECF No. 10 at 13). The Nevada Supreme Court addressed this claim as follows:

> Sanchez-Dominguez also argues that the aggravated stalking charge should have been severed and tried separately because it was unrelated to the other offenses and highly prejudicial. The district court did not abuse its discretion in refusing severance. The record shows that Sanchez-Dominguez had an overarching plan to terrorize and control Maria that ultimately resulted in the burglary and murder. *See* NRS 173.115(2). Also, the evidence that Sanchez-Dominguez burglarized the home and killed Roberto was overwhelming, leaving little reason to believe the jurors convicted him of murder based on emotional outrage over the stalking, rather than admissible evidence regarding the murder.

(Pet. Ex. 13 at 3 n.2).

"[I]t is not the province of the federal habeas court to reexamine state court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Therefore, as a general rule, federal courts may not review a trial court's evidentiary rulings. *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). A state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it is so fundamentally unfair as to violate due process. *Dillard v. Roe*, 244 F.3d 758,

766 (9th Cir. 2001); *see also Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998) (The federal court's "role is limited to determining whether the admission of evidence rendered the trial so fundamentally unfair as to violate due process."). Habeas relief is thus available only if an evidentiary ruling or rule was arbitrary, disproportionate to the end it was asserted to promote, or so prejudicial that it rendered the trial fundamentally unfair. *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006); *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir.1995). Petitioner is entitled to habeas relief only if the error has a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 627, 637 (1993).

Preliminarily, the court addresses the standard of review for this claim. The petitioner argues that the state court's ruling on this claim is not entitled to AEDPA deference because, although he presented it as a due process claim in his appellate briefs, the Nevada Supreme Court instead resolved the claim under an abuse of discretion standard.

The petitioner is not entirely correct. While he did indeed pose his claim as a violation of due process in his opening brief, he also discussed the claim in reference to the abuse of discretion standard. (*See* Ex. 11 at 20-22 (identifying standard of review as abuse of discretion, but recognizing that even if joinder permissible, the charges should be severed if joinder would cause unfair prejudice, and "[i]n that sense, then, this is a Constitutional issue")).[44]

---

[44] Citation is to original page of document.

To the extent the Nevada Supreme Court's opinion may be read as failing to address the due process claim – a point that is arguable but which the court need not decide – that does not necessarily mean that the court failed to adjudicate the due process claim on the merits and that the claim is therefore subject to *de novo* review. "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits— but that presumption can in some limited circumstances be rebutted." *Johnson v. Williams*, 568 U.S. 289, 301 (2013). Even if the Nevada Supreme Court did not directly address the due process claim, the presumption it adjudicated the claim on the merits has not been rebutted here. This is particularly true because its conclusion that the evidence against the petitioner on the murder charge was "overwhelming" is consistent with a conclusion that the joinder of charges did not have a substantial and injurious effect on the jury's verdict. The court therefore concludes that the Nevada Supreme Court adjudicated this claim on the merits, and thus deferential review applies.

Turning to the merits, it is true that a large portion of the evidence pertained to the petitioner's abuse and stalking of Maria. Maria testified that that she was not happy in the marriage, that the petitioner would call her stupid and good for nothing, that she was "very afraid" of him, and that he attempted to isolate her from her family. (Pet. Ex. 5 (Tr. 600-01, 606, 616-17)). She testified that when she left him in 2008, and went to her parents' house, the petitioner came looking for her there. When she went outside to talk to him, he stabbed her in the stomach with a

screwdriver and told her to get her things and come home, which she did. (*Id.* at 609-11).

Later, in the summer of 2008, during an argument that took place while Maria was cooking, the petitioner grabbed a pot and threw it at her and then grabbed a knife and put the dull edge to her neck, telling her that if he ever saw her with someone else, he would kill her and the other person. (*Id.* at 611-12).

During another argument in 2009, the petitioner attempted to slap Maria, and when she stopped him, he instead punched her with a closed fist, giving her a black eye. (*Id*. at 619).

Sometime later, the petitioner struck Maria with a belt, all over her body, until he got tired, because she had not hemmed pants he had told her to hem. (*Id.* at 620-21).

In yet another argument, the petitioner kicked Maria repeatedly on her thighs with his work boots because of an overdrawn account. (*Id*. at 622-23).

On September 23, 2009, after yet another argument, the petitioner raped Maria after she got home from work. (*Id.* at 627-29).

Several other witnesses testified as to the petitioner's repeated attempts to contact or connect with Maria after being served with the TPO, including at her place of work; most observed that he was angry and anxious while doing so. (*See id.* at 561-69, 570-75 (Josh McCaskey); *id.* at 681-94 (Lucilla Garcia); *id.* at 771-75 (David Morton); *id.* at 823 et seq. (Bertha Montano); *id.* at 833 et seq. (Sam Glaster); *id.* at 847 et seq. (Jacob Moschetti)).

Maria's younger sister, Mayra, also testified. (Ex. 5 (Tr. 779)). Mayra had observed the petitioner yelling at Maria and

observed bruises on Maria. (*Id.* at 788-90). She testified that the petitioner frequently called her family's house looking for Maria. Once, when Mayra answered, the petitioner said that if Mayra hung up, he would kill himself by swallowing pills. Mayra told him to go ahead and kill himself, and then she heard a clicking of a gun over the phone. (*Id.* at 800-01). Finally, Mayra testified that on the night of Roberto's murder, the petitioner called her phone twice, trying to find Maria, and that he sounded drunk and angry. (*Id.* at 802-04). The petitioner said he wanted to talk to Maria and that if he couldn't, he was going to do something stupid. (*Id.* at 805).

The petitioner argues that this evidence was so strong and inflammatory, and the evidence supporting premeditation and deliberation so weak, that the jury could have convicted him of first degree murder only because the stalking evidence made him seem like a bad person. He argues that if the stalking charges had been severed and the evidence in support of those charges excluded, he would not have been convicted of first degree murder.

The petitioner's argument ignores the fact that he was charged with first degree murder under both a premeditation theory and a felony murder theory. Moreover, the petitioner does not argue that the burglary charges should have been severed from the murder charge. As the murder and burglary charges were tried together, the petitioner's abuse and stalking of Maria in the years, months and days before the murder was directly relevant to his intent when he broke into the family's home, *i.e.*, it was evidence that

when he entered the home, he did so with the intent to harm Maria.[5] However inflammatory the stalking evidence may have been, its inclusion did not render the trial fundamentally unfair because it was directly relevant to the charges in the case. And even if the admission of this evidence was fundamentally unfair, it was harmless. As the Nevada Supreme Court held, it is difficult to conclude that the jury would not have found the petitioner guilty of felony murder, even if the stalking evidence had been excluded or limited. The evidence of stalking did not therefore have a substantial and injurious effect on the jury's verdict. As such, the state courts were objectively reasonable in rejecting the petitioner's due process and fair trial claim on this ground, and the petitioner is not therefore entitled to relief on Claim Two of the petition.[6]

### B. Claim Three

In Claim Three, the petitioner asserts that his trial counsel rendered ineffective assistance of counsel by failing to present mitigation evidence during the penalty phase. (ECF No. 10 at 16). Specifically, the petitioner asserts that evidence of his drug

---

[5] To the extent the petitioner suggests that in order to be liable for felony murder of Roberto, he must have had the intent to harm Roberto when entering the home, the argument is without merit. The purpose of Nevada's felony-murder rule is "to deter felons from killing negligently or accidentally by holding them strictly responsible for the killings that are the result of a felony or an attempted one." *Payne v. State*, 406 P.2d 922, 924 (Nev. 1965). Thus, the victim of the murder need not be the intended victim of the felony.

[6] Even if the court had concluded that the Nevada Supreme Court did not adjudicate this claim on the merits and *de novo* review applied, the petitioner would not be entitled to relief. On the basis of the evidence in this case, the court concludes there was no violation of due process stemming from the trial court's denial of the motion to sever the charges.

abuse and personal history should have been introduced in order to humanize him and reduce his culpability. (*See id.* at 16-20).

Claim Three is procedurally defaulted.[7] In order to proceed on this claim, the petitioner must demonstrate cause and prejudice for the default. The petitioner here relies on *Martinez v. Ryan*, 566 U.S. 1 (2012). In *Martinez*, the Supreme Court held that the absence or inadequate assistance of counsel in an initial-review collateral proceeding may be relied upon to establish cause excusing the procedural default of a substantial claim of ineffective assistance of trial counsel. *Id.* at 9. Whether the underlying claim is substantial and whether the petitioner suffered any prejudice from the absence or ineffective assistance of postconviction counsel are questions that are intertwined with the merits of the claim itself.

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must satisfy two prongs to obtain habeas relief—deficient performance by counsel and prejudice. 466 U.S. at 687. With respect to the performance prong, a petitioner must carry the burden of demonstrating that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id.* at 688. "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation omitted). In

---

[7] The court made this finding in its order on respondents' motion to dismiss, dated August 20, 2018. (ECF No. 26 at 7).

assessing prejudice, the court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Strickland*, 466 U.S. at 696.

The petitioner argues that he grew up impoverished, came to the United States on his own at a young age, and had limited education, having stopped school at the ninth grade. He also argues that he has a significant drug abuse history that started when he was very young. All of this, he argues, should have been presented in mitigation during the penalty phase. Instead, he asserts, his counsel introduced virtually no mitigation evidence, apart from the petitioner's own unsworn statement, and in fact conceded to the jury that the petitioner would likely die in jail. The petitioner asserts that the decision to not introduce mitigation evidence was unreasonable and that he suffered prejudice as a result.

Considering the evidence introduced at trial and during the penalty phase, it is not reasonably likely that the mitigation evidence petitioner identifies would have altered the outcome of the proceedings. Before the penalty phase, the jury heard evidence of the petitioner's repeated violent abuse of Maria over several years before killing her brother. The abuse was significant and sustained. In light of this evidence, it is not reasonably likely that evidence of the petitioner's childhood and drug abuse would have persuaded the jury to give the petitioner the opportunity at parole, at least not any more than the petitioner's own statement, in which he took responsibility for his actions and begged Maria and her family for forgiveness. (*See* Pet. Ex. 9 (Tr. 25-26)). The

court therefore concludes that this claim lacks merit, and, as such, the petitioner cannot demonstrate prejudice in order to excuse its procedural default. Claim Three must therefore be dismissed.

**V. Certificate of Appealability**

In order to proceed with an appeal, the petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950-951 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Allen*, 435 F.3d at 951; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Allen*, 435 F.3d at 951 (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

The court has considered the issues raised by the petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. Accordingly, the petitioner will be denied a certificate of appealability.

## VI. Conclusion

In accordance with the foregoing, IT IS THEREFORE ORDERED that Claim Three of the amended petition is DISMISSED WITH PREJUDICE and Claim Two of the amended petition (ECF No. 10) is DENIED. This action is therefore DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the petitioner is DENIED a certificate of appealability, for the reasons set forth above.

The Clerk of Court shall enter final judgment accordingly and CLOSE this case.

IT IS SO ORDERED.

DATED: This 28th day of February, 2020.

_____
UNITED STATES DISTRICT JUDGE